## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONGGUAN TESIMAI ELECTRONIC TECHNOLOGY CO., LTD, <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Civil Action No. 2:25-cv-228 <br><br><br> **FILED UNDER SEAL** |

## COMPLAINT

Plaintiff, Dongguan Tesimai Electronic Technology Co., Ltd ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against The Individuals, Corporations, Limited Liability Companies, Partnerships, And Unincorporated Associations identified on Schedule A hereto (collectively, "Defendants"). Defendants, through online commerce platforms including, various fully interactive, commercial internet stores operating under at least the Store Names and Seller Aliases set forth on Schedule "A" to the Complaint (collectively, the "Seller IDs") have infringed, and continue to infringe, on Plaintiff's U.S. Patent No. D891,522 (the "Asserted Patent" or "Plaintiff's Patented Design"), and on Plaintiff's U.S. Copyrights: VA 2-376-313 (Flying Orb over the hand), VA 2-376-315 (Flying Orb in the Universe), and VA 2-376-327 (Flying Orb exploded view) ("Plaintiff's Copyrighted Works") by manufacturing, distributing, importing, offering for sale, and/or selling products encapsulating the Patented Design (the "Infringing Products"), and by advertising, marketing, promoting, distributing, offering for sale, and/or selling Infringing Products using unlicensed and infringing versions of Plaintiff's Copyrighted Works.

1

Plaintiff is forced to file this action to combat Defendants' infringement of their Patented Design, as well as to protect unknowing consumers from purchasing the Infringing Products over the Internet. Plaintiff has been and continues to be irreparably harmed by Defendants' infringement of Plaintiff's Patented Design, and Copyrighted Works and, therefore, Plaintiff seeks injunctive relief to halt such infringement and irreparable harm. Plaintiff also seeks monetary relief for the injury they have sustained and is sustaining. In support thereof, Plaintiff states as follows:

<u>**NATURE OF THE ACTION**</u>

1.      On July 28, 2020, the United States Patent and Trademark Office duly and legally issued the Asserted Patent entitled "TOY AIRCRAFT" to Plaintiff. Plaintiff is the sole assignee of the Asserted Patent shown in **Exhibit 1** and licenses to others, rights under the Plaintiff's Patent. Those licensees design, manufacture, sell, and distribute unique products using Plaintiff's innovative patented design ("Plaintiff's Products").

2.      Plaintiff further warrants that the Asserted Patent and Copyrighted Works are free from any known defects or encumbrances, and are held with full, unencumbered rights of ownership and enforcement.

3.      Plaintiff is the named assignee of, owns all right, title and interest in, and has standing to sue for infringement of the Asserted Patent.

4.      Plaintiff is also the owner of the Copyrighted Works shown in **Exhibit 2**. Plaintiff's Patent and Plaintiff's Copyrighted Works are collectively referred to herein as "Plaintiff's Designs."

5.      Plaintiff registered its Copyrighted Works in December of 2023 which consist of three separate copyrights: a photograph, a 2-D work of visual art, and a technical drawing as shown by **Exhibit 2**.

2

6.    After obtaining the registrations for the Plaintiff's Designs, Plaintiff conducted an internet inquiry and discovered that the Defendants were selling products that embodied the Patented Design, despite having no license or authorization from Plaintiff.

7.    Defendants seek to capitalize upon Plaintiff's proprietary intellectual property rights and designs by offering for sale and selling unauthorized and unlicensed infringing toys embodying the Patented Design and using Plaintiff's Copyrighted Works in the promotional materials and Seller IDs advertising Infringing Products.

8.    On information and belief, Defendants design their Seller IDs to appear to be selling genuine Plaintiff's Products, while they are actually selling Infringing Products to unknowing consumers.

9.    Defendants' Infringing Products are cheaply produced and inferior to Plaintiff's licensed products. The Infringing Products threaten to destroy Plaintiff's reputation and goodwill and cause significant harm to Plaintiff's business, for which there is no adequate remedy because licensing is at the core of Plaintiff's business.

10.    The Seller IDs share unique identifiers establishing a logical relationship between them and reflecting that Defendants' infringing operation arises out of the same transaction, occurrence, or series of transactions or occurrences.

11.    On information and belief, Defendants attempt to avoid liability by going to great lengths to conceal both their identity and the full scope and interworking of their operations. Such efforts include, *inter alia*, changing the names of their stores multiple times, opening new stores, helping others open stores, and making subtle changes to their Infringing Products.

12.    Plaintiff is forced to file this action to combat Defendants' infringement of Plaintiff's Designs, Defendants' infringement of its copyright-protected works, as well as to

protect unknowing consumers from purchasing Infringing Products over the Internet. Plaintiff has been and continues to be irreparably damaged from the loss of its lawful copyright and patent rights to exclude others from making, using, selling, offering for sale, and importing its Patented Design and using its Copyrighted Works as a result of Defendants' actions and seeks injunctive and monetary relief.

13.    On information and belief, Defendants' infringing activities of offering for sale and selling Infringing Products arise from the same transaction, occurrence, or series of transactions. Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products to United States consumers. Further, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products and their corresponding listings share similar characteristics suggestive of common ownership or scheme.

14.    Plaintiff therefore brings this action for federal patent infringement and copyright infringement pursuant to 35 U.S.C. § 271, *et seq*, 17 U.S.C. § 501, *et seq*., and 28 U.S.C. §§ 1338(a), 1331.

## JURISDICTION AND VENUE

15.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 101 *et seq.*, the Copyright Act, 17 U.S.C. § 101, *et seq*., and 28 U.S.C. §§ 1338(a), 1331.

16.    This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws. Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat.§ 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal

jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3) Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k)(2) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

        a.   Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms and storefronts, via on-line marketplace websites, like Amazon.com, Temu.com, and Walmart.com under the Seller IDs, as well as any and all as yet undiscovered accounts

with online storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the United States, including Pennsylvania, can view the one or more of Defendants' online storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective storefronts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c.  Upon information and belief, Defendants' online storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d.  Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

e.  Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Infringing Products.

f.  Upon information and belief, Defendants are employing and benefiting from substantially similar, paid marketing and advertising strategies in order to make their storefronts selling illegal goods appear more relevant and attractive to search result software across an array of queries. By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of genuine Plaintiff's Products on various on-line marketplaces and/or diluting and driving down the retail market price for the (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g.  Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Pennsylvania.

h.  Upon information and belief, many Defendants likely reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

i.  Upon information and belief, Defendants are aware of Plaintiff's Products and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

17.    For the reasons stated above, venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants. In short, each of the Defendants is committing tortious acts in Pennsylvania via offering for sale and/or sale of their infringing goods through the Seller IDs, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Pennsylvania.

### THE PARTIES

**Plaintiff Dongguan Tesimai Electronic Technology Co., LTD.**

18.    Plaintiff Dongguan Tesimai Electronic Technology Co., LTD. ("Plaintiff") is a Chinese Corporation with a principal place of business in the People's Republic of China.

19.    Plaintiff is the sole owner of the Asserted Patent, which is valid, enforceable, and is entitled to a presumption of validity under 35. U.S.C. § 282.

20.    Plaintiff's licensees market and sell high-quality, innovatively designed, Plaintiff's Products that embody the ornamental designs claimed in the Plaintiff's patent.

8

21.    Among the exclusive rights granted to Plaintiff under the Patent Act are the exclusive rights to manufacture, distribute, import, offer for sale, and/or sell goods encapsulated by Plaintiff's Patented Design.

22.    Plaintiff plans to expand the manufacturing and sales of products embodying its patented designs, including the Patented Design asserted in this case. Plaintiff also licenses its patent to other manufacturers who will be using the designs on various products.

23.    Plaintiff's Products are known for their distinctive patented designs. These designs are broadly recognized by consumers and are highly sought after kitchen products. Kitchen products styled after these designs are associated with the quality and innovation that the public has come to expect from Plaintiff's Products. Plaintiff uses these designs in connection with its Products, including, but not limited to, the designs shown in the below table and in Exhibit 1. Plaintiff's Products, including those which embody the Plaintiff's Patented Design, are marked in compliance with 35 U.S.C. § 287(a).

| Patent Number | Claim | Issue Date |
|---|---|---|
| D891,522 | FIG. 1 | Jul. 28, 2020 |

| Patent Number | Claim | Issue Date |
|---|---|---|
| |  | |

FIG. 2

FIG. 3

24.    Plaintiff is the owner of the Copyrighted Works asserted in this action, which are registered with the U.S. Copyright Office and shown in the table below and Exhibit 2.

| Copyright Registration Number and Title | Image Deposit | Registration Effective Date |
|---|---|---|
| **VA 2-376-313**<br><br>Flying Orb over the hand |  | Dec. 21, 2023 |
| **VA 2-376-315**<br><br>Flying Orb in the Universe |  | Dec. 21, 2023 |

| Copyright Registration Number and Title | Image Deposit | Registration Effective Date |
|---|---|---|
| **VA 2-376-327** Flying Orb exploded view |  | Dec. 21, 2023 |

25.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce, prepare derivative works of, distribute copies of, and publicly display Plaintiff's Copyrighted Works. Plaintiff and Plaintiff's licensees use the Copyrighted Works to advertise and promote the Plaintiff's Products.

26.    Plaintiff has spent substantial time and money advertising its goods and plans to continue expanding advertising and promotion of genuine goods embodying the Patented Design and advertised using the Copyrighted Works by authorized distributors and third parties via the Internet. Over the past several years, visibility on the Internet, particularly via e-commerce platforms such as Amazon.com, eBay.com, Temu.com, TikTok.com, Walmart.com, and others (the "Third Party Platforms"), has become increasingly important to Plaintiff's overall marketing. Thus, Plaintiff and its authorized distributors will be expending significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies. Those strategies allow Plaintiff and authorized retailers to educate consumers fairly and legitimately about the value

associated with genuine Plaintiff's Products. Similarly, Defendants' individual Seller IDs are indexed on the Third Party Platforms and compete directly with Plaintiff for space in the search results, resulting in a flooding of the market with Infringing Products and irreparably harming Plaintiff and its business.

**Defendants**

27.     Defendants are individuals and business entities who reside in the People's Republic of China and other foreign jurisdictions. Defendants conduct business or assist in business activity conducted throughout the United States (including within the State of Pennsylvania and this Judicial District) through the manufacturing, online advertising and offering for sale, and importation and distribution of Infringing Products using infringing versions of Plaintiff's Asserted Patent and Copyrighted Works. Each Defendant has targeted the United States, including Pennsylvania specifically, by selling or offering for sale, or knowingly assisting in the selling or offering for sale, Infringing Products to U.S. consumers, including consumers located in Pennsylvania, via various online stores including the Seller IDs.

28.     Defendants appear to be an interrelated group of infringers, who create the Seller IDs on various third-party online platforms and design these stores to appear to sell genuine versions of Plaintiff's Products, while they actually sell inferior infringing imitations of Plaintiff's Products. The Seller IDs share unique identifiers, such as common design elements, the same or similar Infringing Products they offer for sale, product descriptions, shopping cart platforms, and accepted payment methods. They also use the same or similar check-out methods, absent or fake contact information, identically priced or similarly priced Infringing Products and volume sales discounts. These numerous similarities establish a logical relationship between Defendants and show the likelihood that their illegal operations arise out of the same transaction or occurrence.

These tactics used by Defendants to conceal their identities, and the full scope of their illegal operation, make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. Should Defendants provide additional credible information regarding their identities, which they are required to present as part of their defense, Plaintiff will amend the Complaint accordingly.

**DEFENDANTS' UNLAWFUL CONDUCT**

10.     Plaintiff's business success has resulted in significant infringement of Plaintiff's Designs. Consequently, Plaintiff maintains an anti-infringement program and investigates suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. Plaintiff has identified hundreds of fully interactive e-commerce stores, including the Seller IDs, offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. These Infringing Products are flying toys that closely mimic the design patented by Plaintiff, including the same overall shape, dimensions, and aesthetic features. Based on Plaintiff's investigation, Defendants have sold countless varying types of these Infringing Products, with an unknown total retail value. The Infringing Products have been distributed to customers across the U.S., severely impacting the market for Plaintiff's genuine products.

11.     Defendants operate at least the Seller IDs identified in Schedule A and engage in the unauthorized reproduction, public display, and distribution of goods embodying Plaintiff's Patented Design and/or substantially similar thereto and use Plaintiff's Copyrighted Works on their e-commerce storefronts which is causing irreparable harm to Plaintiff's business.

12.     Defendants' unauthorized use and/or manufacturing of the ornamental designs claimed in Plaintiff's Designs in connection with the distribution, advertising, and offering for sale of Infringing Products, including the sale of Infringing Products into the United States, including

Pennsylvania, is likely to cause, and has caused, confusion, mistake, and deception by and among consumers, loss of market share, and erosion of Plaintiff's rights, and is irreparably harming Plaintiff.

13.     Defendants' sale, distribution, and advertising of Infringing Products are highly likely to cause consumers to believe that Defendants are offering and selling authorized products when in fact they are not. The Infringing Products precisely match the patented shape with its specific curvature and dimensionality, design pattern of the toy, and overall aesthetic features, including the exact proportional relationships and surface contours that distinguish the original design, and the promotional images used to market and sell the Infringing Products precisely match Plaintiff's Copyrighted Works. *See* **Exhibit 1** and **Exhibit 2**. Images of the Seller IDs' Infringing Products demonstrate a verbatim reproduction of these specific design elements, causing consumer confusion and market harm. Screenshot evidence showing each Seller ID on Schedule A selling Infringing Products is attached as **Exhibit 3.**

29.     According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2023 was over $2.7 billion. (See **Exhibit. 4** at 2). Internet websites like the Seller IDs are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. (See **Exhibit. 5** at 8).

30.     E-commerce retail platforms such as those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to regularly use false names and addresses when registering with these e-commerce retail platforms.

31.     Defendants have targeted sales to Pennsylvania residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller IDs identified Schedule A attached hereto, offering shipping to the United States, including Pennsylvania , accepting payment in U.S. dollars and, on information and belief, have offered for sale and/or sold Infringing Products to residents of Pennsylvania .

32.     Defendants employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing Seller IDs so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Seller IDs appear sophisticated and accept payment in U.S. dollars via credit cards, Amazon Pay, Western Union, and/or PayPal. Seller IDs often include content and images that make it exceedingly difficult for consumers to distinguish such stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants to use, produce, copy, distribute, or publicly display Plaintiff's Designs, and none of the Defendants are authorized retailers of genuine versions of Plaintiff's Products.

33.     Upon information and belief, Defendants have engaged in fraudulent conduct when registering the Seller IDs by providing false, misleading, and/or incomplete information to e-commerce platforms. Upon information and belief, certain Defendants have anonymously registered and maintained aliases to prevent discovery of their true identities and the scope of their e-commerce operation.

34.     Upon information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products on at least the Third Party Platforms. Such seller alias registration patterns are one of many common tactics used by

Defendants to conceal their identities and the full scope and interworking of their infringement operation, and to avoid being shut down.

35.     Upon information and belief, prior to and contemporaneous with their infringement actions alleged herein, Defendants had knowledge of the popularity and success of the Plaintiff's Products, and in bad faith proceeded to make, use, offer for sale, sell, and/or import the Infringing Products.

36.      Defendants have been engaging in the illegal infringement actions alleged herein knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiff's intellectual property rights, and otherwise in bad faith.

**The Scope of Defendants' Infringing Activities**

37.     Upon information and belief, each Defendant operates more than one merchant storefront.

38.     Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

39.     Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

40.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $100,000.

41.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $300,000.

42.     Upon information and belief, each Defendant's profits from the sale of the Infringing Products total more than $2,000,000.

## JOINDER OF DEFENDANTS

43.     As stated above, on information and belief, Defendants often operate under multiple fictitious aliases, and unauthorized on-line retailers such as the Seller IDs often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other identifying information and likewise omit other seller aliases that they use.

44.     Further, such unauthorized retailers include other notable common features on their internet stores such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, similarities in price and quantities, and/or the use of the same text and stock images or artificially produced images. The Infringing Products offered for sale by unauthorized retailers such as the Seller IDs often bear irregularities and indicia of being unauthorized that are similar to one another, suggesting that the Infringing Products were manufactured by and come from a common source and that these unauthorized retailers are interrelated.

45.     On information and belief, groups of infringers such as Defendants here are typically in communication with each other. They regularly participate in WeChat chat rooms, and communicate through websites such as sellerdefense.cn and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and new lawsuits. See **Exhibit 6**. Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operation despite enforcement efforts. Analysis of financial account transaction logs from previous similar cases indicates that offshore infringers regularly move funds from U.S.-based financial accounts to offshore accounts outside the jurisdiction of the U.S. and this Court. Further analysis of similar cases shows that defendants often sweep their accounts in case their infringing activities are detected, and their accounts are

frozen, at which time defendants will attempt to settle for lesser amounts to regain access to the remaining funds or abandon their stores altogether and start fresh with a new alias.

46.    Infringers such as Defendants commonly operate under multiple seller aliases and payment accounts so that they can continue operating in spite of enforcement efforts. Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Seller IDs. For example, some of the Seller IDs have virtually identical layouts, even though different aliases were used to register the Seller IDs.

47.    Here, on information and belief, Defendants maintain offshore bank accounts and regularly move funds from their financial accounts that are associated with the activity complained of herein to such offshore accounts based outside of the jurisdiction of this Court. On information and belief, Defendants undertake such activity in an attempt to avoid payment of any monetary judgment awarded based on their infringement of intellectual property rights. Defendants appear to be an interrelated group of infringers, who create numerous Seller IDs and design these stores to appear to be selling genuine versions of Plaintiff's Products, while they are actually selling inferior, unauthorized imitations of Plaintiff's Products. The Seller IDs share unique identifiers, such as the following: common design elements, the same or similar infringing products that they offer for sale, similar infringing product descriptions, the same or substantially similar shopping cart platforms, the same accepted payment methods, the same check-out methods, the same dearth of contact information, and identically or similarly priced infringing products and volume sales discounts. The foregoing similarities establish a logical relationship between them and suggest that Defendants' illegal operations arise out of the same series of transactions or occurrences.

48.    On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the

same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have, jointly and severally, knowingly and willfully infringed Plaintiff's Designs in connection with the offer for sale, use and/or manufacturing of Infringing Products and distribution, offering for sale, and sale of Infringing Products into the United States and Pennsylvania over the Internet.

49.    These tactics used by Defendants to conceal their identities and the full scope of their infringing operations make it almost impossible for Plaintiff to learn the precise scope and the exact interworking of their illegal network. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## COUNT I
## INFRINGEMENT OF UNITED STATES DESIGN PATENT NO. D891,522
## (35 U.S.C. § 271(a))

50.    Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

51.    Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have, jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly Plaintiff's Patent.

52.    Defendants make, use, sell, offer for sale, and/or import into the United States products that infringe Plaintiff's Patent.

53.     In the eye of an ordinary observer, the design of Defendants' Infringing Products and the designs claimed in Plaintiff's Patent are substantially the same. The similarities between Plaintiff's Products and the Infringing Products deceives prospective purchasers and induces them to purchase Defendants' products, supposing them to have been sourced from the inventor.

54.     The mechanism of infringement is demonstrated through direct visual reproduction of the Patented Design's unique structural elements. Defendants are engaged in unauthorized manufacturing of products using identical design specifications, marketing and selling products that are substantially indistinguishable from the Patented Design, thereby exploiting the distinctive ornamental characteristics protected by the Asserted Patent. The infringement mechanism specifically involves copying the exact aesthetic design elements of the Patented Design without authorization.

55.     Defendants' Infringing Products misappropriate the novelty of the designs claimed in the Plaintiff patent that distinguished Plaintiff's patented designs from the prior art.

56.     Defendants sell, offer for sale, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the ornamental designs claimed in Plaintiff's Patent.

57.     Defendants have infringed Plaintiff's Patent through the acts complained of herein and will continue to do so unless enjoined by this Court.

58.     Defendants have had actual and/or constructive notice of Plaintiff's rights in the Patent because the Patent is marked on products embodying the patented design and/or their packaging with the patent number in accordance with 35 U.S.C. § 287.

59.     Defendants' infringement of Plaintiff's Patent has been willful. Accordingly, Plaintiff is entitled to treble damages under 35 U.S.C. § 284 and this is an exceptional case under 35 U.S.C. § 285.

60.     Defendants' infringement of the Asserted Patent has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in the Patent.

61.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283 to halt Defendants' infringement of Plaintiff's Designs, which has caused Plaintiff to suffer irreparable harm resulting from the loss of its lawful rights under U.S. patent law to exclude others from making, using, selling, offering for sale, and importing the designs claimed in Plaintiff's Patent.

62.     Plaintiff is entitled to recover damages adequate to compensate Plaintiff for Defendants' infringement of Plaintiff's Patent, including Defendants' profits pursuant to 35 U.S.C. § 289.

63.     Plaintiff is entitled to recover any other damages as appropriate pursuant to 35 U.S.C. § 284 which should include no less than a reasonable royalty.

## COUNT II
## COPYRIGHT INFRINGEMENT (17 U.S.C. § 101 *et seq.*)

64.     Plaintiff hereby re-alleges and incorporates by reference each of the allegations set forth in the preceding paragraphs.

65.     Plaintiff's Copyrighted Works constitute creative, original works of authorship, fixed in a tangible medium of expression, and protectable under U.S. copyright law. *See* 17 U.S.C. § 102.

66.     Plaintiff is the owner of valid and enforceable copyrights in Plaintiff's Copyrighted Works.

67.    Plaintiff has complied with the registration requirements of 17 U.S.C. § 411(a) for Plaintiff's Copyrighted Works and has obtained valid copyright registrations for Plaintiff's Copyrighted Works.

68.    Defendants do not have any ownership interest in Plaintiff's Copyrighted Works.

69.    Defendants had access to the Plaintiff's Copyrighted Works via the internet.

70.    Without authorization from Plaintiff, or any right under the law, Defendants have, *inter alia*, willfully copied, reproduced, publicly displayed, and distributed, products incorporating Plaintiff's Copyrighted Works, in connection with their operation of the Seller IDs.

71.    Defendants' Infringing Products incorporate works that are virtually identical to and/or are substantially similar to Plaintiff's Copyrighted Works.

72.    Defendants have, therefore, individually, as well as jointly and severally, infringed and continue to infringe Plaintiff's copyright in Plaintiff's Copyrighted Works in violation of 17 U.S.C. § 501(a). *See also* 17 U.S.C. §§ 106(1), (3), (5).

73.    Defendants reap the benefits of their unauthorized reproduction, public display, and distribution, of Plaintiff's Copyrighted Works through their receipt of substantial revenue, including substantial profit, driven by sales of their Infringing Products.

74.    Defendants have unlawfully appropriated Plaintiff's protectable expression by taking material of substance and value and creating Infringing Products that include Plaintiff's Copyrighted Works.

75.    Defendants' infringement has been willful, intentional, malicious, and purposeful, and in disregard of, and with indifference to, Plaintiff's rights.

76.    Defendants, by their actions, have caused financial injury to Plaintiff to an amount to be determined at trial.

77.     Defendants' conduct is causing, and unless enjoined and restrained by this Court will continue to cause, Plaintiff irreparable injury that cannot fully be compensated for or measured monetarily. Plaintiff has no adequate remedy at law for such injury.

78.     In light of the foregoing, and as contemplated by 17 U.S.C. § 502, Plaintiff seeks temporary, preliminary, and permanent injunctive relief prohibiting further infringement of Plaintiff's copyrights by Defendants.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for judgment against Defendants and entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, directing as follows:

(1)     Defendants, their officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert or participation with them be permanently enjoined and restrained from the following activities, as Plaintiff has demonstrated (1) that it has suffered an irreparable injury; (2) that remedies available at law are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction:

      (a)     making, using, importing, offering for sale, and selling any products not authorized by Plaintiff that include any reproduction, copy, or colorable imitation of the designs claimed in Plaintiff's Designs;

      (b)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth herein; and

(c)   aiding, abetting, contributing to, or otherwise assisting anyone in infringing Plaintiff's Designs.

(2)   Directing that Defendants deliver for destruction all products that include the designs claimed in Plaintiff's Designs as well as all means for making such designs.

(3)   Entering an Order that all banks, savings and loan associations, other financial institutions, payment processors, on-line marketplaces, and other third-parties who are in active concert or participation with Defendants, shall, within two (2) business days of receipt of an Order entered by this Court:

(a)   Locate all accounts connected to Defendants, including, but not limited to, any Third Party Platforms accounts;

(b)   Restrain and enjoin such accounts from transferring or disposing of any money or other of Defendants' assets; and

(c)   Transfer any funds restrained in such accounts to Plaintiff within ten (10) business days of receipt of such Order.

(4)   Entering an Order that, until Plaintiff has recovered full payment of monies owed to it by Defendants, in the event that any new financial accounts controlled or operated by Defendants are identified, Plaintiff shall have the ongoing authority to direct any banks, savings and loan associations, other financial institutions, payment processors, and on-line marketplaces, including, without limitation, the Third Party Platforms, and any other platforms, with whom such newly identified accounts are maintained, to carry out the following activity:

(a)   Locate all accounts connected to Defendants, including, but not limited to, any Third Party Platform accounts;

25

(b)     Restrain and enjoin such accounts from transferring or disposing of any

money or other of Defendants' assets; and

(c)     Transfer any funds restrained in such accounts to Plaintiff within ten (10)

business days of receipt of this Order.

(5)     Judgment be entered against Defendants finding that they have infringed upon

Plaintiff's patent.

(6)     Judgment be entered against Defendants finding that infringement of Plaintiff's

patent has been willful.

(7)     Judgment be entered against Defendants finding that they have infringed upon

Plaintiff's Copyrighted Works.

(8)     Judgment be entered against Defendants finding that infringement of Plaintiff's

Copyrighted Works has been willful.

(9)     That Plaintiff be awarded damages for such infringement calculated as follows: (1)

A reasonable royalty based on the fair market value of the infringed work, (2) Lost profits directly

attributable to the infringement, and (3) Any additional economic harm proven at trial, with the

total amount to be determined through expert testimony and economic analysists.

(10)     Plaintiff be awarded treble damages under 35 U.S.C. § 284 for Defendants' willful

infringement of upon Plaintiff's patent.

(11)     Awarding Plaintiff statutory damages based on Defendants' willful copyright

infringement, pursuant to 17 U.S.C. § 504(c)(2), in an amount up to $150,000 per infringed work,

per Defendant, or such other amount as the Court deems just and proper;

(12)     A finding that this case is exceptional under 35 U.S.C. § 285. Awarding Plaintiff

such damages as it may prove at trial adequate to compensate Plaintiff for Defendants'

infringement of Plaintiff's Designs and awarding Plaintiff all of the profits realized by Defendants, or others who are or were acting in concert or participation with Defendants, from Defendants' unauthorized use and infringement of Plaintiff's Designs.

(13)    Alternatively, should the Court not award Plaintiff statutory damages based on Plaintiff's copyright claim, that Defendants be ordered to pay to Plaintiff all actual damages sustained by Plaintiff as a result of Defendants' infringement, said amount to be determined at trial; and that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' infringement of Plaintiff's copyright in Plaintiff's Copyrighted Works as complained of herein, to the extent not already accounted for in the above-referenced assessment of actual damages;

(14)    Awarding Plaintiff all other damages that it may be entitled to under applicable law.

(15)    Awarding Plaintiff its costs in bringing this action.

(16)    Awarding Plaintiff any further relief that this Court deems just and proper.

Date: February 18, 2025

Respectfully submitted,

By: /s/ Michael Mitchell
Michael Mitchell ARDC 6324363
Shengmao (Sam) Mu, NY #5707021
Abby Neu ARDC 6327370
Keaton Smith ARDC 6347736
**WHITEWOOD LAW PLLC**
57 West 57th Street, 3rd and 4th Floors
New York, NY 10019
Telephone: (917) 858-8018
Email: mmitchell@whitewoodlaw.com

*Counsel for Plaintiff*

# Schedule A

| DOE # | Seller ID/Alias | Platform | Store ID |
|---|---|---|---|
| 1 | ampm1 | Amazon | A2HC4CESC0N2WJ |
| 2 | AQJP | Amazon | ASXUYK89YETFC |
| 3 | changzhishishikunshangmaoyouxiangongsi | Amazon | A20XRED2ISZ28K |
| 4 | dongdong-US | Amazon | A3HFKS5RXLELLE |
| 5 | guanguanUS | Amazon | A2SLHHXOR0CGXD |
| 6 | guangzhouzhijimayiyouxiangongsi | Amazon | AYZ1JCFD5S66V |
| 7 | huanggangshijironghengshangmaoyouxiangongsi | Amazon | A30CPI188JHCBJ |
| 8 | JanQee | Amazon | A2VR9VYTW8JS74 |
| 9 | jianghuiwendgfnm | Amazon | ASKKZ5X6W5PB1 |
| 10 | jlkl;fil;yu | Amazon | AL894O8JQ4WT7 |
| 11 | KeepShiny | Amazon | A11Y8YRWJH1NIZ |
| 12 | lidongchunama | Amazon | A1SSOVHV8YOSCR |
| 13 | LiKuan168 | Amazon | ANPKUST2R0NAB |
| 14 | momochang | Amazon | A3ME2CUDOKBLZJ |
| 15 | pengpengyoupudianIKL4 | Amazon | A7N3KVFT0TRYW |
| 16 | RLDai-us | Amazon | A3QXZRA08E2LR3 |
| 17 | SZSCZ | Amazon | A25KL599M2T5XQ |
| 18 | TOOPZU | Amazon | A1ESLYQA5RQPOF |
| 19 | Trendy Globes | Amazon | A2CQ52TSWAQEFA |
| 20 | ULTIMATE TRENDY MART | Amazon | A2ZFRRTOZ1IFBJ |
| 21 | VenzoExpress | Amazon | A25P28QOQFO561 |
| 22 | VUONG HEMERT | Amazon | AWXJ8FTMWMRC6 |
| 23 | xiamenbinshengdamaoyiyouxiangongsi | Amazon | A30VXY9W0XPCLU |
| 24 | xiamenliangpangpangdianzikejiyouxiangongsi | Amazon | AA88WOZUULX1U |
| 25 | YILE-US | Amazon | A2VVRUX9B9FTW5 |
| 26 | 段雷服装商贸 | Amazon | A1QDFSA1XEYXJ8 |
| 27 | chulunsuny | Walmart | 101618617 |
| 28 | FITEASE | Walmart | 101636160 |
| 29 | gengdahuokunshangmao | Walmart | 102483923 |
| 30 | HNGQDL | Walmart | 101679794 |
| 31 | shanxixinjiakedianzishangwuyouxiangongsi | Walmart | 101616127 |
| 32 | Tamama | Walmart | 101691947 |
| 33 | Yafei | Walmart | 101214671 |
| 34 | zhenyushangmao | Walmart | 102522701 |